UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ANGEL GARCIA as Independent Administrator of the Estate of MIGUEL ANGEL GARCIA, Deceased. | ) ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | 05 C 4413 |
| NATIONAL RAILROAD PASSENGER CORPORATION, d/b/a AMTRAK, NORTHEAST ILLINOIS COMMUTER RAILROAD CORPORATION, d/b/a METRA, and THE CITY OF CHICAGO, a municipal corporation, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter is before the court on the motion of Plaintiff Angel Garcia ("Plaintiff") to remand this case to state court and the motion of Defendant Northeast Illinois Commuter Railroad Corporation ("Metra") to bar expert testimony from Alexander Litwornia. For the reasons set forth below, Plaintiff's motion to remand is denied and Metra's motion to bar Litwornia's testimony is granted.

## BACKGROUND

On April 24, 2005, Plaintiff's decedent, Miguel Garcia ("Garcia"), and Derek Andrade went to the Grayland train station in Chicago to catch a train to return to

Andrade's home in Round Lake. Garcia and Andrade planned to catch the final train of that day, which arrived during the 8pm hour. Garcia and Andrade arrived at Grayland on the east side of the tracks and, because there were no posted train schedules on the east side, crossed over a pedestrian walkway to the west side of the tracks to look at a schedule. While on the west platform, the two men saw a train approaching from the south. Thinking this train was theirs, Garcia and Andrade began to jog across the tracks to get to the east platform to catch the train. Andrade crossed first, and by the time Garcia ran in front of the train, he did not have sufficient time to get across. He was struck and killed.

The train station was owned, operated, and controlled by Metra, an Illinois corporation. The train that struck Garcia was owned by National Railroad Passenger Corporation ("Amtrak"). On June 29, 2005, Plaintiff sued Defendants Amtrak, Metra, and the City of Chicago in the Circuit Court of Cook County alleging negligence under state law. Approximately one month later, Amtrak removed the case to our court, relying on the jurisdictional basis provided in 28 U.S.C. § 1349.[1]

---

[1]District courts have original jurisdiction over civil actions against any corporation in which the United States owns more than one half of the capital stock. 28 U.S.C. § 1349. Amtrak is such a corporation.

The parties began a nine-month discovery process, during which Plaintiff named Litwornia as a retained expert witness. The discovery disclosures specified that he would

> discuss all safety violations committed by the defendants; applicable regulations and other safety industry standards that were violated by the defendants; safe custom and practice in train station operation, maintenance, control and/or supervision; ... [and] his duties with respect to safety at train stations where he worked.

Exh. G to Def.'s Motion to Bar the Testimony of Alexander J. Litwornia. He was to offer specific testimony

> about the condition of Metra's Grayland Train Station and how the conditions of this station contributed to the death of Miguel Garcia ... [particularly] the lighting, track design, station design, the layout of the station, the structures and any other aspects of Grayland Train Station....It will be his opinion that the poor lighting conditions, the malfunctioning lights and/or any other problems with the lighting contributed to the April 24, 2005 accident.

Id. Litwornia prepared a five-page report that listed all the data and testimony he reviewed and outlined in his opinions. The parties attempted to schedule Litwornia's deposition on several occasions, but to date he has not been deposed. For that reason as well as their conviction that Litwornia is neither qualified to offer an expert opinion on the issues contained in his report nor has supported his conclusions with testing or analysis, Metra has moved to bar Plaintiff from using his testimony in this case.

After fact discovery was completed, Plaintiff and Amtrak reached a settlement of all claims against Amtrak, which were then dismissed with prejudice, barring any contribution claims against it. Because Amtrak's presence in the case was the sole basis for our initial exercise of jurisdiction over the case, Plaintiff requests that the case be remanded to the Circuit Court of Cook County.

## LEGAL STANDARDS

**A. Motion to Remand**

If a civil action filed in state court is one over which the federal district courts have original jurisdiction, the defendant may remove the case to federal court. 28 U.S.C. § 1441. The burden of establishing federal jurisdiction is on the party seeking to invoke it; therefore, when a defendant seeks to remove an action, the burden is on that party to show that an exercise of jurisdiction is warranted. Workman v. United Parcel Serv., Inc., 234 F.3d 998, 999 (7th Cir. 2000). The presence of one claim that can properly be heard by a federal court allows all claims within the case to be heard before that court, pursuant to the supplemental jurisdiction established by 28 U.S.C. § 1367.

If a case containing both federal and state claims is properly removed, but thereafter the underlying federal questions that served as the basis for removal are resolved, a district court can remand a case to the state court where it originated. See United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S. Ct. 1130, 1139 (1966). However, the primary policies underpinning supplemental jurisdiction are the efficient use of scarce judicial resources and the need to avoid duplicative litigation. See Rosado v. Wyman, 397 U.S. 397, 405, 90 S. Ct. 1207, 1214 (1970). This policy can be thwarted if a case is remanded after substantial judicial resources have been committed to it while an independent basis for federal jurisdiction existed, such that the state court would likely engage in repetitive effort upon the case's return. Graf v. Elgin, Joliet & Eastern R. Co., 790 F.2d 1341, 1347-48 (7th Cir. 1986). A district court should also take into consideration convenience to the parties and the complexity of the state laws involved when deciding whether to retain jurisdiction. United States v. Zima, 766 F.2d 1153, 1158-59 (7th Cir. 1985).

**B. Motion to Bar Expert Testimony**

The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and the standard of review initially established in Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 113 S. Ct. 2786 (1993).[2] United States v. Parra, 402 F.3d 752, 758 (7th Cir. 2005). To be admissible, expert testimony must both be offered by a person qualified as an expert by their knowledge, skill, experience, training, or education and assist the trier of fact to understand the evidence or to determine a fact in issue. Fed. R. Evid. 702. The testimony must be based on facts and data that reliably relate to the facts of the case and that are proved by valid theory or technique. See Daubert, 509 U.S. at 593, 113 S. Ct. at 2796-97. The admission or exclusion of expert testimony is a matter left to the discretion of the trial judge. See Carroll v. Otis Elevator Co., 896 F.2d 210, 212 (7th Cir. 1990). Whether a particular witness as an expert is qualified is determined by comparison of the area in which the witness has superior skill, knowledge, education, or experience with the subject matter of the witness's proposed testimony. Id.

With these principles in mind, we turn to the parties' motions.

## DISCUSSION

**A. Plaintiff's Motion to Remand**

It is undisputed that Amtrak properly removed this action and that we had supplemental jurisdiction over the claims against the other two defendants at the time of the removal. Thus, the only question posed by Plaintiff's motion to remand is whether we should continue to exercise supplemental jurisdiction over the claims that

---

[2]Although Daubert was a case in which scientific testimony was in question, its requirements have extended to include all expert testimony, scientific or not. Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 147-78, 119 S. Ct. 1167, 1174 (1999).

remain now that Amtrak is no longer a party. This matter has been before us for over a year. Both parties have invested considerable time and money into the extended discovery process, which is complete save Litwornia's deposition. The parties have litigated several pretrial motions, and a motion for summary judgment is currently pending. In light of the substantial energies invested by this court and the parties during the time that Amtrak's presence provided federal question jurisdiction over this matter, we conclude that a remand at this late stage would likely result in a duplication of effort by the state court and the parties. Neither does this case contain state law issues that are particularly complex or novel; it is a run-of-the-mill wrongful death action. There is no reason to support the notion that a state court's consideration of this matter is necessary to provide a final resolution of the issues in play.

For these reasons, we conclude that this case presents circumstances that call for a continued exercise of our supplementary jurisdiction pursuant to 28 U.S.C. § 1367. Accordingly, Plaintiff's motion to remand is denied.

**B. Metra's Motion to Bar Testimony from Litwornia**

As stated earlier, Plaintiff has proffered Litwornia to give expert testimony on the issues of alleged safety issues, particularly pertaining to the lighting at the Grayland station. Metra advances three arguments in support of its motion to bar this testimony: first, Plaintiff should be sanctioned under Fed. R. Civ. P. 37 because Litwornia has not been produced for a deposition; second, the contents of his curriculum vitae indicate that he is not qualified to serve as an expert as to the issues on which he is to offer testimony; and third, his report is not sufficiently grounded in scientific analysis to

enable it to assist the trier of fact. Because the second and third points, if successful, would moot the first, we examine them first.

It is apparent from Litwornia's curriculum vitae that he is a highly qualified transportation engineer. However, the vast majority of his experience appears to be in the area of automobile traffic, with only a few projects that also include a railroad component. Impressive credentials are not enough to allow an expert to pass through the gates of Rule 702. See Minasian v. Standard Chartered Bank, PLC, 109 F.3d 1212, 1216 (7th Cir. 1997). There must be a degree of correlation between the areas in which Litwornia has superior knowledge and experience and the subject matter of the opinions he would offer before his testimony can be admitted. In this case, Litwornia's opinions center on the condition and design of the railroad station with respect to safety, but his curriculum vitae does not point to any training or experience that he has had in this very specific and highly regulated area.

Relatedly, Litwornia's report and supplementary affidavit do not enumerate any testing or analysis that he performed to reach the conclusions he sets forth. An opinion must provide not only materials reviewed and a bottom line result but also the process that led from the former to the latter. See Mid-State Fertilizer Co. v. Exchange Nat'l Bank of Chicago, 877 F.2d 1333, 1339 (7th Cir. 1989). Without a specified analytical basis, the conclusions of a purported expert have no evidentiary significance. See Minasian, 109 F.3d at 1216. Litwornia's offerings are missing this intermediate information; without it, we must conclude that his opinions are mere speculation.

In sum, we agree with Metra that Litwornia is not qualified as an expert in the areas on which he is to offer testimony, and even if he was, his opinions would not offer

enable it to assist the trier of fact. Because the second and third points, if successful, would moot the first, we examine them first.

It is apparent from Litwornia's curriculum vitae that he is a highly qualified transportation engineer. However, the vast majority of his experience appears to be in the area of automobile traffic, with only a few projects that also include a railroad component. Impressive credentials are not enough to allow an expert to pass through the gates of Rule 702. See Minasian v. Standard Chartered Bank, PLC, 109 F.3d 1212, 1216 (7th Cir. 1997). There must be a degree of correlation between the areas in which Litwornia has superior knowledge and experience and the subject matter of the opinions he would offer before his testimony can be admitted. In this case, Litwornia's opinions center on the condition and design of the railroad station with respect to safety, but his curriculum vitae does not point to any training or experience that he has had in this very specific and highly regulated area.

Relatedly, Litwornia's report and supplementary affidavit do not enumerate any testing or analysis that he performed to reach the conclusions he sets forth. An opinion must provide not only materials reviewed and a bottom line result but also the process that led from the former to the latter. See Mid-State Fertilizer Co. v. Exchange Nat'l Bank of Chicago, 877 F.2d 1333, 1339 (7th Cir. 1989). Without a specified analytical basis, the conclusions of a purported expert have no evidentiary significance. See Minasian, 109 F.3d at 1216. Litwornia's offerings are missing this intermediate information; without it, we must conclude that his opinions are mere speculation.

In sum, we agree with Metra that Litwornia is not qualified as an expert in the areas on which he is to offer testimony, and even if he was, his opinions would not offer

a trier of fact any assistance in assessing the condition of the train station that night. Accordingly, the motion to bar his testimony must be granted on those bases, obviating consideration of the issues pertaining to his production for deposition.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to remand this case to the Circuit Court of Cook County is denied; Metra's motion to bar testimony from Alexander J. Litwornia is granted.

_____
Charles P. Kocoras
United States District Judge

Dated:     August 10, 2006