UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ANGEL GARCIA, as independent Administrator )
of the Estate of Miguel Angel Garcia, Deceased )
)
                     Plaintiff, )
)
  vs. )   05 C 4413
)
NATIONAL RAILROAD PASSENGER )
CORPORATION, d/b/a AMTRAK; )
NORTHEAST ILLINOIS COMMUTER )
RAILROAD CORPORATION, d/b/a METRA, )
and THE CITY OF CHICAGO, a municipal )
corporation, )
)
                     Defendants. )

## **MEMORANDUM OPINION**

CHARLES P. KOCORAS, District Judge:

      This matter comes before the court on the motion of Defendant Northeast Illinois Regional Commuter Railroad Corporation ("Metra") for summary judgment against Angel Garcia ("Plaintiff") pursuant to Federal Rule of Civil Procedure 56. For the reasons set forth below, Metra's motion is granted.

## **BACKGROUND**

      On April 24, 2005, Plaintiff's decedent, Miguel Garcia ("Garcia"), and Derek Andrade took a Metra train to the Grayland station in Chicago to attend a 1:20 p.m.

Chicago Cubs baseball game.[1]  The station has two parallel train tracks running north and south and is illuminated by artificial lighting.  A chain link fence separates the two tracks except where an east–west walk allows pedestrians to cross to the opposite platform.

During the game and visits to several nearby bars afterward, Garcia and drank three beers and three shots of hard liquor; he drank the last shot less than 30 minutes before returning to the Grayland station to catch a train back to Andrade's home.  According to medical reports, this amount of alcohol was enough to intoxicate Garcia.

Garcia and Andrade entered the Grayland station using the same footpath they had used to exit the station earlier that day.  Even though they were already standing on the correct side of the train tracks, they walked over the crosswalk to the other side of the tracks to look at a train schedule.  When they reached the opposite platform, Andrade saw a train approaching the station.  He told Garcia, "that's probably our train.  We need to try to catch it."  Garcia responded, "let's go."  Garcia and Andrade believed that the incoming train would block the crosswalk preventing them from getting to the other platform and, ultimately, from boarding their outbound train.  Because of this

---

[1]The relevant facts are taken from the portions of the parties' filings under Local Rule 56.1 presented in conformity with Local Rule 56.1.  Statements of fact not properly before us or unsupported by the record have been disregarded.  See Brasic v. Heinemann's Inc., 121 F.3d 281, 284 (7th Cir. 1997).

belief, Garcia and Andrade thought they needed to cross the tracks before the train pulled into the station.

Believing that they could not walk fast enough to reach the other side, Garcia and Andrade began jogging parallel to the tracks toward the crosswalk and the oncoming train with Garcia behind Andrade. The lights in the station provided sufficient illumination to allow Andrade to see the crosswalk, observe no defects in the crosswalk, and jog over it. As Andrade turned to enter the crosswalk, he saw the train light again and heard the train horn sound. At that time, he was directly in the train's path; Garcia was behind him over the other train track, out of the path of the oncoming train.

Andrade continued to run to the opposite platform as the train horn continued to blow. The horn was very loud and Andrade understood that it meant that the train was coming and that the horn was meant to be a warning. Once Andrade reached the opposite platform he turned and saw Garcia jogging across the tracks. At that point, the train arrived, striking Garcia and killing him.

Robert Kussow was the engineer operating the train that struck Garcia. The train had four lights on its front and was traveling between 60 m.p.h. and 79 m.p.h. at the time of the accident. Kussow did not recall if the station lights were working on the date of the accident, but he stated that he would be able to see pedestrians on the tracks without the station lights. Kussow stated that his view was not obstructed for 1.5 miles

before the Grayland station and he could see the crosswalk when he was 1760 feet from the station. The lighting conditions at the station did not affect Kussow's ability to see Garcia and Andrade. From the time that Kussow saw Andrade enter the tracks, he continuously sounded the train horn.

The train station was owned, operated, and controlled by Metra, an Illinois corporation. The train that struck Garcia was owned by National Railroad Passenger Corporation ("Amtrak"). On June 29, 2005, Plaintiff sued Defendants Amtrak, Metra, and the City of Chicago in the Circuit Court of Cook County, alleging negligence under state law. Amtrak was dismissed as a party on April 12, 2006, pursuant to settlement. The City of Chicago was dismissed on July 26, 2006. After remand to the state court was denied, Metra filed the instant motion for summary judgment in its favor on the portions of Plaintiff's complaint pertaining to it.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party must identify the specific portions of the total record, which it believes establishes the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). This initial burden may be

satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." Celotex, 477 U.S. at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505 (1986); Insolia v. Philip Morris, Inc., 216 F.3d 596, 599 (7th Cir. 2000). The court must consider the record as a whole in a light most favorable to the non-moving party and draw all reasonable inferences that favor the non-moving party. Anderson, 477 U.S. at 255; Bay v. Cassens Transport Co., 212 F.3d 969, 972 (7th Cir. 2000). With these principles in mind, we turn to Metra's motion.

## DISCUSSION

For Plaintiff to succeed on his negligence claim against Metra, he must establish that Metra breached a duty it owed to Garcia and that the breach proximately caused

Garcia's death. Gouge v. Central Illinois Public Serv. Co., 582 N.E.2d 108, 111 (Ill. 1991). Plaintiff asserts that Metra was obligated to provide various safety mechanisms at the station, including barriers, gates, and warning lights. Plaintiff also takes issue with the placement of the train schedule and the amount of lighting at the station.

The parties spend a great deal of time arguing about whether Metra owed any duty to Garcia to warn him of a train he knew was coming. However, in this case, the existence of a duty and its scope is beside the point; Plaintiff must offer evidence that would allow a reasonable jury to render a verdict in his favor on all four elements of his negligence claim. On the issue of proximate cause, he has not done so.

Proximate cause involves two components: cause in fact and legal cause. See Young v. Bryco Arms, 821 N.E.2d 1078, 1085 (Ill. 2004). In order for a defendant's act to be a legal cause of a plaintiff's injuries, the risk that a person will suffer the injuries sustained by the plaintiff must be foreseeable by a reasonable person, not merely within the realm of the possible. See id. at 1086. Although proximate cause is usually an issue of fact, if no reasonable jury could return a verdict in favor of Garcia, summary judgment is appropriate. See Young, 821 N.E.2d at 1087; Pugh v. City of Attica, 259 F.3d 619, 625 (7th Cir. 2001).

There is no dispute that Garcia knew that a train was approaching; its presence was the impetus for the actions that he took. Following his friend, he ran down the

tracks toward the train and intentionally ran in front of it as its horn was sounding. In cases where a plaintiff shows such blatant disregard for his or her own safety, Illinois courts have concluded that the reckless behavior becomes the sole proximate cause of resulting injury, even in the face of simultaneous breaches of due care by defendants. See, e.g., First Springfield Bank & Trust v. Galman, 720 N.E.2d 1068, 1073 (Ill. 1999); Yates v. Shackelford, 784 N.E.2d 330, 337 (Ill. App. Ct. 2002). Though what happened to Garcia is undeniably tragic, we do not think that any reasonable jury would conclude that Metra should have foreseen that a person would attempt to outrun and then cross in front of a train that he knew was bearing down upon him. In the absence of that foreseeability, Metra is not legally responsible for the injuries Garcia incurred and summary judgment in its favor is warranted.

## CONCLUSION

Based on the foregoing, Metra's motion for summary judgment is granted.

_____
Charles P. Kocoras
United States District Judge

Dated:    October 19, 2006